# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3338 | **DATE** | 10/28/2010 |
| **CASE TITLE** | Central States, Southeast and Southwest Areas Pension Fund, et al. vs. Blue Sky Heavy Hauling, Inc. | | |

**DOCKET ENTRY TEXT**

This matter is before the Court on Defendant Blue Sky Heavy Hauling, Inc.'s motion for reassignment and consolidation [91]. For the reasons stated below, the Court denies Defendant's motion for reassignment and consolidation [91].

■[ For further details see text below.]

Docketing to mail notices.

---

# STATEMENT

## I.     Factual Background

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, and Howard McDougall (collectively referred to as "Central States" or the "Fund") filed the instant suit ("*Central States I*") on June 10, 2008, to collect approximately $29,000 in pension contributions that Plaintiffs claim are owed pursuant to an audit covering January 2002 to December 1, 2007.

On February 24, 2010, Blue Sky filed three counterclaims for the return of pension contributions that Defendant contends were made but not owed. The counterclaim alleges that some of the overpayments were made as a result of clerical errors on Blue Sky's part. The counterclaim also alleges that other overpayments were made because Blue Sky unilaterally withdrew from the Fund many years before it ceased remitting contributions to the Fund in November 2007. Blue Sky's theory is based on the Fund's rule that prohibits "adverse selection." According to Blue Sky, it violated the adverse selection rule long before November 2007 and it therefore effectuated a unilateral withdrawal from the Fund by 2002 (or earlier). Blue Sky alleges that payments that it made as contributions to Central States after the adverse selection rule violation began in 2002 (or earlier) were not owed as contributions and were made based upon mistakes of law, fact, or both. As a result, Blue Sky seeks restitution (Count I), recoupment (Count II), and setoff (Count III) of contributions paid to the Fund after the adverse selection rule violation allegedly began. Thus, one issue before the Court may be the date on which Blue Sky withdrew from the Fund, and resolution of that issue may affect both the Fund's contribution claim and Blue Sky's refund claim. Discovery in the present case closed on July 6, 2010, and the parties' cross-motions for summary judgment were filed on September 17, 2010.

In another case pending before Judge Gottschall in this district ("*Central States II*"), Central States sued to collect interim withdrawal liability payments. In its Complaint, Central States alleges that Blue Sky withdrew from the Fund on December 1, 2007, thereby triggering withdrawal liability of $963,062.89. The Fund alleges (and Blue Sky admits) that the Fund served a notice and demand for payment of withdrawal liability on Blue Sky in February 2008, which informed Blue Sky that it was required to discharge its liability in a lump sum or monthly interim payments of $8,796.42 beginning March 1, 2008. The Fund alleges (and Blue Sky admits) that the monthly interim payments were made from March 2008 through January 2010, but no payments were made after January 2010. In addition, the Fund alleges (and Blue Sky admits) that Blue Sky has initiated arbitration to dispute its liability and that the arbitration is pending.

Blue Sky also filed a counterclaim in *Central States II* that, as Blue Sky acknowledges, "substantial[ly] overlaps" with the counterclaim in the present case. Indeed, many of the paragraphs of the counterclaim in *Central States II* are identical to the paragraphs of the counterclaim in this case; however, there also are numerous additional allegations in *Central States II*. In particular, Blue Sky's counterclaim in *Central States II* seeks a declaratory judgment determining the date of its withdrawal and a recalculation of the amount of its liability based upon a corrected date, as well as a credit for any overpayment of withdrawal liability. Blue Sky also seeks an "Equitable Stay" of the Fund's complaint in *Central States II* until the recalculation occurs. Blue Sky further asserts that the Fund should be estopped from asserting that the withdrawal occurred after 2004 and that the Fund's selection of the 2007 withdrawal date violates an implied covenant of good faith and fair dealing. Counts I through IV challenge the merits of the withdrawal liability assessment; Count V asserts that Blue Sky is entitled to "setoff/recoupment" of all contributions paid to the Fund after the correct date of withdrawal.

The Fund filed a summary judgment motion in *Central States II* on July 24, 2010. Citing *Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.,* 2008 WL 4201014, at *2 (N.D. Ill. Sept. 9, 2008) and related authority, the Fund argues that Blue Sky had to show both that the assessment based upon the selection of the 2007 withdrawal date was frivolous and that the payments would cause irreparable harm, a task that the Fund insists Blue Sky cannot accomplish. Further, the Fund contends that Counts I through IV of the Counterclaim should be dismissed because they attack the merits of the assessment, which can only be challenged in arbitration. Finally, the Fund argues that Count V, which seeks the contribution refund, should be dismissed because it is duplicative of the counterclaim filed in the present case. In support of the last argument, the Fund cited *Serlin v. Arthur Andersen & Company*, 3 F.3d 221, 223 (7th Cir. 1993), where the court indicated that "[a]s a general rule, a federal suit may be dismissed for reasons of wise judicial administration * * * whenever it is duplicative of a parallel action already pending in another federal court."

Blue Sky filed a motion to strike the Fund's summary judgment motion in *Central States II*, which Judge Gottschall denied on August 18, 2010. However, she granted Blue Sky's motion for an extension of time until September 17, 2010, to file its response to the Fund's summary judgment motion. The Fund's reply was due on October 1, 2010.

On September 17, 2010, the Fund filed a motion for summary judgment in the present case, and Blue Sky filed its response on October 15. The Fund's reply is due on October 29. Therefore, both *Central States I* and *II* have pending motions for summary judgment that are or soon will be fully briefed.

As noted above, Blue Sky has initiated an arbitration concerning the withdrawal liability assessment in October 2008 ("Blue Sky's Arbitration Case"). An arbitrator was selected in November 2008 but after twenty-two months, it does not appear that any activity has taken place and no dates or deadlines have been

scheduled. In May 2010, the American Arbitration Association requested a status report. Other than notifying the American Arbitration Association of the change in attorneys, the record indicates that Blue Sky has not responded to this request.

## II.     Analysis

In the Northern District of Illinois, cases are randomly assigned to a district judge. L.R. 40.1. This system can lead to situations in which two or more cases that are closely related will be pending before different judges. In such an instance, Local Rule 40.4 provides a mechanism whereby parties can request that the later-filed case be reassigned to the judge who is presiding over the lower-numbered, earlier-filed case. The rule promotes efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common. To obtain reassignment of a case, a movant must first show that the case to be reassigned is "related" to a previously filed case and then demonstrate that reassignment would promote efficient use of judicial resources under four specific criteria.

To be "related," two cases must satisfy *at least* one of the four criteria laid out in Rule 40.4(a): the cases share some issues of fact or law; they involve the same property; each grows out of the same transaction or occurrence; or they involve one or more of the same classes if the motion is made in the context of multiple class action suits. See also *Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, 2008 WL 1848142, at *3 (N.D. Ill. Apr. 23, 2008). Here, the parties are the same and the impetus for each suit is Blue Sky's alleged failure to pay contributions that Central States claims it owes. Thus, each case grows out of the same transaction or occurrence.

Even if two cases are found to be related, the moving party must also meet *each* of four criteria specified in L.R. 40.4(b) before a case will be reassigned. First, both cases must be pending in this district. Second, a substantial savings of judicial time and effort must be likely to result from the reassignment of the cases to a single judge. Third, the earlier-filed case must be at a point where designating a later-filed case would not be likely to substantially delay the proceedings in the earlier case. Fourth, the cases must be susceptible to disposition in a single proceeding. *Id.* at *3-4. (Parenthetically, the Court notes that Blue Sky did not even address the 40.4(b) conditions in its opening brief, and addressed them only in a conclusory manner in its reply brief.)

The Court need look no further than to the respective docket sheets to conclude that the first condition of L.R. 40.4(b) is satisfied. Both cases are pending in the Northern District of Illinois. With respect to the third condition, although *Central States I* has been pending for two more years, both cases are at the summary judgment stage, so they appear to be on parallel tracks, at least as far as the timing is concerned.

With respect to the second and fourth conditions, Blue Sky, as the moving party, bears the burden of indicating "the extent to which the conditions required by section (b) will be met if the cases are found to be related." L.R. 40.4(c)(2). On the second factor, Blue Sky asserts that a substantial savings of judicial time and effort will result from the reassignment of the cases to a single judge. However, Blue Sky has done little to demonstrate that this condition is met. Rather, Blue Sky merely alludes to "substantial issues" that may arise "relating to the possibility of inconsistent judgments and issues and claim preclusion that could be avoided." Yet Blue Sky fails to identify the potential inconsistent judgments that could arise. Conclusory assertions do not shed much light on how the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort.

Furthermore, while there is one issue that might be common in both cases – the date of Blue Sky's

withdrawal from the Fund – it does not appear that the court in *Central States II* will reach a determination on the merits of the date of withdrawal issue because the threshold question presented in that case is whether the Fund's determination of the date of withdrawal is frivolous. Moreover, to defeat the Fund's interim payment argument in *Central States II*, Blue Sky must show both (i) that the Fund's position on the date of withdrawal is frivolous and (ii) that payment of the withdrawal liability would result in irreparable harm. See *Warner and Sons, Inc*., 2008 WL 4201014 at *2. In the event that the court resolves the dispute by ruling in the Fund's favor on the ability to pay issue – and thus might not even reach the issue of whether the Fund's claim is frivolous – there might not be any (much less substantial) savings of judicial time and effort by reassignment of the later-filed case. At a minimum, Blue Sky has not sustained its burden of showing that this condition is met.

Even if the date of withdrawal issue is reached in *Central States II*, the standard used by the court in resolving the issue would be materially different than the standard that this Court will use in resolving the issue. In *Central States II*, Blue Sky must demonstrate that the Fund's position on the date of withdrawal issue is frivolous. *Id*. On the other hand, the standard for the Fund to prevail in the present case on the date of withdrawal issue is higher – either *de novo* or arbitrary and capricious. Because the standard for evaluating the merits of the date of withdrawal selected by the Fund in *Central States II* is so light (*i.e.*, frivolousness), consolidating the cases would not result in a "substantial saving of judicial time and effort."

Blue Sky's motion also asserts that the Fund has "improperly split" its cause of action into two separate suits. But if, as Blue Sky contends, the Fund has split its cause of action, then a judgment in the first case will be an absolute bar to any recovery for the Fund in the second case. See *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995) ("Instead of improving plaintiffs' chances, claim-splitting reduces them – for the first court will not have entertained all of the arguments, and the missing ones may have been winners. This penalty for claim-splitting ought to eliminate the practice; a plaintiff cannot do worse by presenting all claims to one forum."). Furthermore, the conclusory allegation that the Fund has split its cause of action may not withstand scrutiny.

To begin with, *Central States I* is a suit under § 515 of ERISA to enforce an employer's contractual duty to remit contributions to the Pension Fund based upon an audit covering the period from January 2002 to December 2007. *Central States II* is a suit to collect statutory interim withdrawal liability payments from Blue Sky resulting from the termination of Blue Sky's duty to contribute. At least two judges in this district have concluded that such claims are not the same for *res judicata* purposes. See *Central States Pension Fund v. Courtsey Cartage Co.*, 98-C-666 (N.D. Ill. February 1, 1999) (J. Gottschall) (judgment in a delinquent contribution case did not bar subsequent withdrawal liability suit because claims are not the same); *Robbins v. Kohn Beverage Co.*, 1985 WL 955, at *7 (N.D. Ill. 1985) ("[T]his case is not an outgrowth of the earlier Ohio action. The earlier action concerned contribution liability under the collective bargaining agreement, whereas this case concerns statutory liability for pension plan withdrawal."). Moreover, the complaint in *Central States II* alleges that Blue Sky made its interim withdrawal liability payments through January 2010 and that Blue Sky's failure to remit the required interim payments did not begin until the February 2010 payment, which was nearly two years after the present case was filed. Thus, the claim asserted in *Central States II* for the interim payments after January 2010 did not accrue until nearly two years after *Central States I* was filed. The rule against claim splitting "does not apply to claims that did not exist when the first suit was filed." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008) (quoting *Wedow v. City of Kansas City*, 442 F.3d 661, 669 (8th Cir. 2006)); *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based upon claims that accrue after a previous suit was filed").

In sum, because Blue Sky has not demonstrated that substantial savings of judicial time and effort would

**STATEMENT**

result from the reassignment of the cases to a single judge, the Court concludes that reassignment is not appropriate under these circumstances. Blue Sky's alternative request for consolidation of the two cases under Fed. R. Civ. P. 42(a) also is denied for many of the same reasons. However, to the extent that claims in both cases survive summary judgment and there are efficiencies to be gained – for example, in regard to additional discovery – there are mechanisms available to allow the assigned judges to manage the two cases in a coordinated fashion.

**III.   Conclusion**

For these reasons, Defendant's motion for reassignment and consolidation [91] is denied.